IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BURENA SMITH,

    Plaintiff,

v.

MARK T. ESPER, SECRETARY,
U.S. DEPARTMENT OF THE ARMY,

    Defendant.

Civil Action No.: GLR-18-3844

## <u>MEMORANDUM OPINION</u>

THIS MATTER is before the Court on Defendant Mark T. Esper, Secretary, U.S. Department of the Army's (the "Army") Motion to Dismiss or for Summary Judgment[1] (ECF No. 14). The Motion is ripe for disposition, and no hearing is necessary. <u>See</u> Local Rule 105.6 (D.Md. 2018). For the reasons set forth below, the Court will grant in part and deny in part Defendant's Motion to Dismiss.

## I.    BACKGROUND[2]

### A.    Factual Background

Plaintiff Burena W. Smith is a Black, African-American woman who has worked for the federal government for over thirty-five years. (Compl. ¶ 9, ECF No. 1). At the time of the events at issue in this case, Smith was an Information Technology ("IT") Specialist

---

[1] For reasons set forth below, the Court will construe the Motion as a motion to dismiss.

[2] Unless otherwise noted, the Court takes the following facts from Smith's Complaint and accepts them as true. <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (citations omitted).

in the Research, Development, and Engineering Command ("RDECOM") at the Aberdeen Proving Ground ("APG"), an Army facility in Aberdeen, Maryland, where she worked for over thirteen years. (Id. ¶ 10).

Smith filed discrimination complaints in 2012 and 2013 with the Army's Equal Employment Opportunity ("EEO") Office, prior to the internal complaint that underlies the instant action. (Id. ¶ 16). In her April 2013 complaint, Smith named her second-level supervisor, Paul Brozovic, Supervisory General Engineer, as the "Responsible Management Official" engaged in discriminating against her. (Id. ¶ 19).

On January 14, 2013, Smith submitted a request to Colonel Kenneth Tarcza, RDECOM Chief of Staff, for a temporary promotion to GS-2210-13 as the Information Assurance Manager ("IAM") or a management reassignment to a GS-13/14 position. (Id. ¶ 107). Smith is and was a GS-2210-12. (Id. ¶ 10). The last IAM had departed RDECOM in the fall of 2012, and Smith had assumed and been successfully performing his duties for months when she reached out to Tarcza. (Id. ¶¶ 103–05). Over the following several months, Smith provided several pieces of documentation supporting her request. (Id. ¶¶ 108–10). Over the course of this period, the Army posted two openings for International Assurance Program Manager ("IAPM") positions, but Smith was not selected to interview or otherwise compete for these postings, both of which closed without filling the position. (Id. ¶¶ 112–15).

Afterwards, Smith alleges that Brozovic was responsible for changing the open position from an IAM/IAPM position into an Information Technology Specialist position, for which Smith's white coworker, Bill Craft, was qualified. (Id. ¶ 116). In March 2014,

Brozovic selected Craft for the position and Craft's selection was approved by Dale Ormond, then RDECOM-Director. (Id. ¶ 117; see Def.'s Mot. Dismiss ["Def.'s Mot."] Ex. 9 ["AJ Decision"] at 7, ECF No. 14-10).

Also in March 2014, Smith's third-level supervisor, Pamela Kartachak, Director, learned of the existence of Smith's EEO complaint against Brozovic. (Compl. ¶ 51). Later that month, Smith's direct supervisor, Mark Flaherty, Supervisor IT Specialist, proposed subjecting Smith to a one-day suspension for working past her duty hours. (Id. ¶ 20). The deciding official on the suspension—who eventually approved the disciplinary action— was Kartachak. (Id. ¶ 21).

In May 2014, Kartachak attempted to meet with Smith regarding the one-day suspension, but Smith, who is a member of the National Federation of Federal Employees ("NFFE") Local 178 (the "Union"), advised Kartachak of her desire to have a Union representative present for the disciplinary meeting. (Id. ¶¶ 17, 22–25). Over the following weeks, Kartachak repeatedly tried to meet with Smith or otherwise force her to accept a disciplinary letter without the presence of a Union representative. (Id. ¶¶ 28–37). During one such encounter on May 21, 2014, Smith alleges that after Kartachak surreptitiously handed her the disciplinary letter—hidden in a manila folder—she set the document back in Kartachak's folded arms. (Id. ¶¶ 29–34). Coworkers who overheard the May 21 incident recalled Kartachak being verbally abusive toward Smith, reported that they did not find Kartachak's depiction of events credible, and posited that Kartachak was mistreating Smith because Smith is a Black woman. (Id. ¶¶ 41–47). Weeks later, in a meeting with Smith and a Union representative on June 19, 2014, Kartachak proposed that Smith be suspended for

ten days, purportedly for "push[ing]" the disciplinary letter "into [her] chest." (Id. ¶¶ 48–54).

Following this incident, Smith attended Certified Advanced Security Practitioner ("CASP") training from August 5–8, 2014, onsite at APG. (Id. ¶ 58). After being released early during the first day of training, Smith looked for a place to complete the "homework" she had been assigned and, finding no place to do so at her workplace, went home to complete the assignments. (Id. ¶¶ 59–63). That day and again later that week, coworkers and supervisors looked for Smith and sought to assign her work, but were unable to find or get in contact with her. (Id. ¶¶ 64–68). Smith alleges that, as her supervisors know, she did not have a government cell phone to receive calls or emails while she attended the training, and therefore was not aware that her colleagues were looking for her. (Id. ¶¶ 87, 94). Once she learned of the tasks she had been assigned, however, she timely completed them. (Id. ¶ 74). Nevertheless, the incidents led to a meeting with Smith, Flaherty, Brozovic, and a Union representative, wherein they demanded that Smith account for her time during the training and asserted that she had "charged the government time for which she was unaccounted." (Id. ¶ 77–86).

Smith alleges that this behavior was characteristic of Brozovic, who repeatedly "would ask [Smith] to show proof of work which was not for routine supervisory purposes, but in a manner implicating that [Smith] was being untruthful or dishonest." (Id. ¶ 99). Smith noted that Brozovic "would not make the same type of challenging requests of other employees," specifically citing one white and another Asian coworker as examples. (Id. ¶¶ 100–01). Smith further alleges that a witness to her mistreatment stated that Brozovic

4

targeted Smith because she "is an African-American woman who is outspoken and speaks up for herself." (Id. ¶ 102). According to Smith, this witness commented, "I also think Paul Brozovic is racist. . . . I think their problem with [Smith] is the color of her skin." (Id.).

Smith further alleges, without specifying the dates of this mistreatment, that she was ostracized, given no support, interrupted, marginalized, bullied, disrespected, excluded from meetings, and surveilled by Flaherty, Brozovic, and Kartachak. (Id. ¶¶ 149–55, 161–62). She further alleges that multiple coworkers have told her that Flaherty, Brozovic, and Kartachak would warn coworkers not to interact with her and would malign, defame, and besmirch her. (Id. ¶¶ 156–59). One witness referred to the sharing of such information about Smith as the "Burena Brief." (Id. ¶ 157).

Smith also identifies an email in which Flaherty used language suggesting discriminatory animus toward African-American employees. Specifically, Flaherty received an email from another RDECOM employee named Karen Belcastro containing the statement, "that's a tactic they use!! Play dumb!" (Id. ¶ 140). Flaherty responded, "not sure they play." (Id.). He then brought up Smith, writing, "[Smith] pulled the card on [Dr. Nathan Buchheit] this week." (Id.). Smith averred in her Complaint that "they" referred to African-Americans in this exchange. (Id.). Although Smith does not say so expressly, the implication is that the "card" in this exchange refers to the "race card," further suggesting that "they" referred to African-Americans, and that Flaherty was suggesting that African-American employees at RDECOM were not just "play[ing] dumb," but were actually less intelligent than their non-African-American counterparts.

On August 31, 2014, Smith filed the EEO complaint forming the basis for this action. (Id. ¶ 56). Just four days later, Colonel Kenneth Tarcza, RDECOM Chief of Staff, approved Kartachak's proposed ten-day suspension. (Id.).

**B.   Procedural Background**

On June 26, 2014, Smith made initial contact with an EEO counselor. (Def.'s Mot. Ex. 1 ["EEO Counselor's Report"] at 1, ECF No. 14-2). The Army emailed Smith a Notice of Right to File a Formal Complaint of Discrimination on July 30, 2014. (Def.'s Mot. at 3–4; see also Def.'s Mot. Ex. 2 ["Right to File Notice"], ECF No. 14-3. Smith received the Right to File Notice by certified mail on August 16, 2014. (Pl.'s Opp'n to Def.'s Mot. Dismiss ["Pl.'s Opp'n"] at 3, ECF No. 31).

On August 31, 2014, fifteen days after receiving the Right to File Notice via certified mail, Smith filed the EEO complaint forming the basis for this action. (Compl. ¶ 56). The Army EEO Office initially determined that Smith's Complant was untimely. (Def.'s Mot. Ex. 7 ["Sept. 17, 2014 Dismissal"] at 1–2, ECF No. 14-8). Two weeks later, however, the Army reversed course and stated that Smith "received the Notice of Right to File a Formal Complaint of Discrimination on August 16, 2014." (Def.'s Mot. Ex. 8 ["Oct. 6, 2014 Revocation"] at 1, ECF No. 14-9). On August 16, 2017, an Equal Employment Opportunity Commission ("EEOC") Administrative Judge determined that Smith had failed to establish that her treatment constituted unlawful discrimination. (AJ Decision at 14). Smith timely appealed and the EEOC Office of Federal Operations ("OFO") affirmed the decision on September 14, 2018. (Def.'s Mot. Ex. 10 ["OFO Decision"] at 5, ECF No. 14-11).

On December 13, 2018, Smith, proceeding pro se, filed a Complaint in this Court against Mark T. Esper, Secretary, U.S. Department of the Army. (ECF No. 1). The three-count Complaint alleges: race, sex, and color discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") (Count I); hostile work environment in violation of Title VII (Count II); and retaliation in violation of Title VII (Count III). (Compl. ¶¶ 164–79). Smith seeks compensatory and punitive damages, a retroactive promotion with back pay, front pay, pre- and post-judgment interest, attorneys' fees and costs, and "negative tax consequences." (Id. at 20).

On November 27, 2019, the Army filed a Motion to Dismiss. (ECF No. 14). Smith filed an Opposition on August 7, 2020. (ECF No. 31). The Army filed a Reply on September 24, 2020. (ECF No. 36).

## II.   STANDARD OF REVIEW

### A.   Conversion

The Army styles its Motion as a Motion to Dismiss or for Summary Judgment. A motion styled in this manner implicates the Court's discretion under Rule 12(d). See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., 788 F.Supp.2d 431, 436–37 (D.Md. 2011), aff'd, 684 F.3d 462 (4th Cir. 2012). This Rule provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The Court "has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider

7

it.'" Wells-Bey v. Kopp, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and a reasonable opportunity for discovery. See Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt., 721 F.3d 264, 281 (4th Cir. 2013). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005). The Court "does not have an obligation to notify parties of the obvious." Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 261 (4th Cir. 1998).

Ordinarily, summary judgment is inappropriate when "the parties have not had an opportunity for reasonable discovery." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011). Yet, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)). To raise sufficiently the issue that more discovery is needed, the non-movant must typically file an affidavit or declaration under Rule 56(d), explaining the "specified reasons" why "it cannot present facts essential to justify its opposition." Fed.R.Civ.P.

56(d). A Rule 56(d) affidavit is inadequate if it simply demands "discovery for the sake of discovery." Hamilton v. Mayor of Balt., 807 F.Supp.2d 331, 342 (D.Md. 2011) (citation omitted). A Rule 56(d) request for discovery is properly denied when "the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." Ingle ex rel. Estate of Ingle v. Yelton, 439 F.3d 191, 195 (4th Cir. 2006) (quoting Strag v. Bd. of Trs., Craven Cmty. Coll., 55 F.3d 943, 953 (4th Cir. 1995)).

Smith argues that it would be premature to construe the Army's Motion as one for summary judgment because she has not had a reasonable opportunity for discovery. (Pl.'s Opp'n at 13). In addition, counsel for Smith has submitted an affidavit, in accordance with Rule 56(d), setting forth several detailed categories of discovery that could establish a genuine issue of material fact in this dispute. (Pl.'s Opp'n Ex. A ["Farr Aff."], ECF No. 31-1). The Court is satisfied that the evidence sought by Smith could establish a genuine dispute of material fact sufficient to defeat summary judgment. Accordingly, the Court will construe the Army's Motion as a motion to dismiss.

Although the Court will construe the Army's Motion as a motion to dismiss, the Court "may consider . . . documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed." Sposato v. First Mariner Bank, No. CCB-12-1569, 2013 WL 1308582, at *2 (D.Md. Mar. 28, 2013); see CACI Int'l v. St. Paul Fire & Marine Ins. Co., 566 F.3d 150, 154 (4th Cir. 2009). Courts in Maryland and throughout the region have routinely determined that EEO documents like the ones attached to the Army's Motion—and to Smith's Response—are integral

documents in employment discrimination actions. See, e.g., Britt v. Brennan, No. RDB-19-0401, 2020 WL 1701711, at *2 (D.Md. Apr. 8, 2020); Battle v. Burwell, No. PWG-14-2250, 2016 WL 4993294, at *9 n.8 (D.Md. Sept. 19, 2016); Mustafa v. Iancu, 313 F.Supp.3d 684, 687 (E.D.Va. 2018); Leftwich v. Gallaudet Univ., 878 F.Supp.2d 81, 90 n.2 (D.D.C. 2012); Lee v. Esper, No. 18-3606-TLW-KFM, 2019 WL 7403969, at *3 (D.S.C. Aug. 13, 2019), report and recommendation adopted, 2020 WL 32526 (D.S.C. Jan. 2, 2020). As such, the Court will consider the EEO documents attached to the Motion to Dimiss and Smith's Response as integral documents. As Smith correctly notes, however, "federal employees [have] the same right [of action] as private sector employees enjoy" and a federal employee is entitled to a "trial de novo" on her discrimination claims where the OFO rejects her allegations of discrimination. Chandler v. Roudebush, 425 U.S. 840, 844–45 (1976). Accordingly, the Court will disregard any disputed findings of fact or law set forth in the decisions attached to the Army's Motion as Exhibits 9 and 10 (ECF Nos. 14-10, 14-11).

**B.      Rule 12(b)(6) Standard**

The purpose of a Rule 12(b)(6) motion is to "test[ ] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

Pro se pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers.[3] Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Pro se complaints are entitled to special care to

---

[3] Although Smith is currently represented by counsel, she did not have counsel at the time she filed her Complaint.

determine whether any possible set of facts would entitle the plaintiff to relief. Hughes v. Rowe, 449 U.S. 5, 9–10 (1980). But even a pro se complaint must be dismissed if it does not allege "a plausible claim for relief." Forquer v. Schlee, No. RDB-12-969, 2012 WL 6087491, at *3 (D.Md. Dec. 4, 2012) (citation and internal quotation marks omitted).

## III.   ANALYSIS

### A.   Timeliness

Prior to instituting a judicial action alleging employment discrimination under Title VII or the ADEA, a federal employee is required to exhaust all available administrative remedies. 42 U.S.C. § 2000e-16(c); Brown v. Gen. Servs. Admin., 425 U.S. 820, 832 (1976). First, the employee must file a charge of discrimination with the agency's EEO office within forty-five days of the alleged act of discrimination. 29 C.F.R. § 1614.105(a)(1). A complainant's failure to contact an EEO Counselor within the forty-five days prescribed "is tantamount to failure to timely exhaust all administrative remedies" and "ordinarily results in dismissal of a complaint of discrimination." Blount v. Thompson, 400 F.Supp.2d 838, 841 (D.Md. 2004) (citing Jakubiak v. Perry, 101 F.3d 23, 26–27 (4th Cir. 1996)).

If an informal resolution is not reached through counseling with an EEO Counselor, the agency must issue a written Notice of Right to File a Formal Complaint advising the complainant of her responsibility to file a formal complaint within fifteen days of receipt of the notice. 29 C.F.R. § 1614.105(d); see also 29 C.F.R. § 1614.106(b) (2013) (requiring a federal employee to file a formal complaint within fifteen days of receiving notice of a right to do so). Failure to comply with the fifteen-day time limit set by 29 C.F.R. §

1614.106(b) similarly bars an action in federal court. See Blount v. Shalala, 32 F.Supp.2d 339, 341 (D.Md. 1999) (dismissing Title VII claims on timeliness grounds for the plaintiff's failure to file a formal administrative complaint within fifteen days of being noticed of her right to do so), aff'd, 199 F.3d 1326 (4th Cir. 1999).

The Army argues that Smith failed to exhaust her administrative remedies because she failed to file her formal administrative complaint within fifteen days of the Army emailing her the Right to File Notice. (Def.'s Mot. at 11–13). The Army states in its Motion and provides supporting documentation substantiating that it emailed Smith a Notice of Right to File a Formal Complaint of Discrimination on July 30, 2014, and that it received a read receipt from Smith on that date reflecting that she received the email. (Def.'s Mot. at 3–4; Def.'s Mot. Ex. 2 ["Right to File Notice"], ECF No. 14-3; Def.'s Mot. Ex. 3 ["RTF Cover Email"], ECF No. 14-4; Def.'s Mot. Ex. 4 ["Read Receipt"], ECF No. 14-5). The documents reflect that just fourteen seconds elapsed between the EEO Specialist emailing Smith the Right to File Notice, which came in the form of an attachment, and Smith purportedly opening the file. (See Read Receipt).

Smith asserts that she received the Right to File Notice via certified mail on August 16, 2014, and her formal complaint was therefore timely. (Pl.'s Opp'n at 3, 9–11).[4] Smith's

_____

[4] The Army argues in its Reply that "Plaintiff never asserts, likely because she cannot do so truthfully, that she did not receive the Notice on July 30, 2014." (Def.'s Reply Supp. Mot. Dismiss ["Def.'s Reply"] at 3, ECF No. 36). There is sufficient ambiguity on this point that, construing the factual allegations in the light most favorable to Smith, the Court will not grant the Army's motion to dismiss on this basis. Regardless, as set forth below, the Army waived its timeliness argument during the administrative proceedings on this matter.

contention is supported by the unusually short period of time between the sending and receiving of the email containing the Right to File Notice, as reflected by the Read Receipt. The Court is persuaded that based on the pleadings and the enclosed EEO documents, there is sufficient uncertainty around this issue that it cannot say as a matter of law that Smith received the Right to File Notice on July 30, 2014, and therefore that Smith's formal complaint was untimely.

Even if the Court were to determine that Smith's complaint was untimely, it would decline to dismiss the claim on this basis because the Army waived its timeliness defense during the administrative proceedings on this matter. The Army is correct that the acceptance and investigation of an EEO complaint does not by itself result in a waiver of the timeliness defense. See Blount, 32 F.Supp.2d at 341 ("It is well settled that a federal agency does not waive its right to object to untimely filings merely by accepting a complaint for investigation."). However, although there is not yet binding Fourth Circuit precedent on this issue, this Court has held that where "the administrative law judge and the OFO reached the merits of Plaintiff's non-selection claim without addressing timeliness, the Agency has waived this defense[.]." Fletcher v. Carter, No. PX 15-3897, 2017 WL 876485, at *6–7 (D.Md. Mar. 6, 2017), aff'd as modified, 741 F.App'x 175 (4th Cir. 2018); see also Ester v. Principi, 250 F.3d 1068, 1071–72 (7th Cir. 2001) ("[W]hen an agency decides the merits of a complaint, without addressing the question of timeliness, it has waived a timeliness defense in a subsequent lawsuit.").

The Court is persuaded by these decisions and finds that because the Army did not address timeliness in deciding the merits of Smith's complaint, (see AJ Decision, OFO

14

Decision), it cannot now raise the argument as a defense to this lawsuit. Accordingly, we decline to dismiss Smith's complaint on the grounds that she failed to exhaust administrative remedies.

**B.      Disparate Treatment Discrimination (Count I)**

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), "prohibits employers from discriminating on the basis of race, color, religion, sex, or national origin, or retaliating against their employees for opposing or seeking relief from such discrimination." Green v. Brennan, 136 S.Ct. 1769, 1773–74 (2016); see Gentry v. E. W. Partners Club Mgmt. Co. Inc., 816 F.3d 228, 233 (4th Cir. 2016); Boyer-Liberto v. Fontainbleu Corp., 786 F.3d 264, 298 (4th Cir. 2015) (en banc). "The elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012).

Smith alleges that she is a Black, African-American woman and was discriminated against on the basis of her race, color, and sex. The Army does not appear to dispute that Smith was a member of a protected class or that her job performance was satisfactory. (Compl. ¶¶ 9, 105; see generally Def.'s Mot.). The Army has argued that many of the discriminatory acts Smith alleges do not rise to the level of an adverse employment action under Title VII, and that she has not properly identified a similarly situated comparator outside of her protected class. The Court addresses these arguments in turn.

In order to prevail under Title VII, "the existence of some adverse employment action is required." James v. Booz–Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004). An "adverse employment action" is one that "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Hoyle v. Freightliner, LLC, 650 F.3d 321, 337 (4th Cir. 2011) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)).

Smith has alleged at least two adverse employment actions in this matter: her two-week suspension and the Army's failure to promote her into an IAM/IAPM role. See Parker v. Sec'y U.S. Dep't of Veterans Affs., 676 F.App'x 101, 106 (3d Cir. 2017) (finding that a two-week suspension constitutes an adverse action in Title VII discrimination case); Bryant v. Aiken Reg'l Med. Ctrs. Inc., 333 F.3d 536, 544 (4th Cir. 2003) (stating that "[i]t has long been clear that failure to promote an employee constitutes an adverse employment action for the purposes" of Title VII). Thus, the Court concludes that Smith has satisfied her burden on this prong for the purposes of surviving a motion to dismiss.

The Army next argues that Smith has not adequately alleged a claim of discrimination because the only allegations in her Complaint averring that her race, color, or sex were the reason for the disparate treatment she experienced were either "conclusory" or speculative statements from witnesses. (Def.'s Mot. at 15–16). As an initial matter, the Court notes the pro se nature of the Complaint and its obligation to construe pleadings drafted by pro se plaintiffs liberally. See Erickson, 551 U.S. at 94. Smith has made several references in the Complaint that at least imply an allegation that the mistreatment she

16

described in the preceding passages occurred because of her race, color, sex. (See, e.g., Compl. ¶ 102 [following several paragraphs alleging that Brozovic mistreated Smith, an allegation that a witness described Brozovic as a racist]; id. ¶ 47 [following description of events leading up to Smith's suspension, an allegation that a witness believes Kartachak mistreated Smith because she was a Black woman]; id. ¶ 140 [following description of negative feedback from Flaherty in response to Smith's leave request, a reference to a racially insensitive email from Flaherty]). The Court therefore does not agree with the Army that Smith's statements are the sort of unsupported or conclusory factual allegations that fail to state a claim under Rule 12(b)(6). See United Black Firefighters, 604 F.2d at 847.

Smith does not, however, identify similarly situated coworkers outside of her protected class to whom this Court can compare her experience. In the case of her failure to promote, Smith alleges that she was not selected for two openings for which she was qualified in 2013—well outside the limitations period for this action—and that the Army then changed the nature of the position so that it conformed to the qualifications of Craft, a white male, to whom it then awarded the promotion. (Compl. ¶¶ 103–17). However, the Court notes that Craft received his promotion in March 2014, meaning that all of the decisions underlying that promotion necessarily occurred more than forty-five days before Smith made initial contact with an EEO counselor on June 26, 2014. (Id. ¶ 105; AJ Decision at 7). Smith has not identified any subsequent promotional decision she was denied due to her race, sex, or color, much less any similarly situated coworker outside of her protected class who received such promotion. Similarly, with respect to Smith's suspension, she has

17

not identified any similarly situated coworkers outside of her protected class who were either not disciplined or received less discipline in circumstances analogous to those leading up to Smith's suspension.

An employment discrimination plaintiff is not required "to plead facts establishing a prima facie case of discrimination to survive a motion to dismiss." McCleary-Evans v. Md. Dep't of Transp., State Highway Admin., 780 F.3d 582, 585, 2015 WL 1088931 (4th Cir. 2015) (citing Swierkiewicz v. Sorema N. A., 534 U.S. 506, 585 (2002)); see also Bryant, 333 F.3d at 545 ("[Plaintiff] is not required as a matter of law to point to a similarly situated white comparator in order to succeed on a race discrimination claim."). However, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Coleman, 626 F.3d at 190 (quoting Twombly, 550 U.S. at 555). Here, the Court is left with no option but to speculate as to what evidence Smith intends to rely on to demonstrate that the adverse employment actions at issue in this case were discriminatory. Accordingly, the Court will dismiss Smith's claims of disparate treatment discrimination on the basis of race, sex, and color.

## C.     Hostile Work Environment (Count II)

"A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002). In determining whether a plaintiff's hostile work environment claim can survive a motion to dismiss, courts look to "all the circumstances[, which] may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it

unreasonably interferes with an employee's work performance. . . . [N]o single factor is required." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993).

To state a hostile work environment claim, a plaintiff must plead that there is "(1) unwelcome conduct; (2) that is based on the plaintiff's . . . race[, sex, or color]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." Boyer-Liberto, 786 F.3d at 277 (quoting Okoli v. City of Balt., 648 F.3d 216, 220 (4th Cir. 2011)). The Court "can consider actions that contributed to the hostile work environment but occurred prior to [the bounds of the statute of limitations], under the continuing violation doctrine." U.S. Equal Emp. Opportunity Comm'n v. Phase 2 Invs. Inc., 310 F.Supp.3d 550, 574 (D.Md. 2018).

The Army argues that Smith "does not state a hostile work claim because she never plausibly connects her suspension and non-promotion to Defendant's animus based on race, gender, or color." (Def.'s Mot. at 18). But in limiting its analysis of what may have comprised Smith's hostile work environment to just those actions that, standing alone, constitute adverse employment actions, the Army far too narrowly construes the law regarding hostile work environment claims. Rather, acts that give rise to a hostile work environment claim are not limited to actions that themselves constitute actionable adverse employment actions.

The Army also points to two cases containing fact-sets it views as instructive for the instant case. See Thorn v. Sebelius, 766 F.Supp.2d 585 (D.Md. 2011), aff'd, 465 F.App'x 274 (4th Cir. 2012); Nurriddin v. Bolden, 674 F.Supp.2d 64 (D.D.C. 2009). These cases,

both of which found that the plaintiff had failed to establish a hostile work environment, are distinguishable from the case at bar. Thorn involved a series of allegations of discrete misconduct, including not being assigned to particular projects, being stripped of certain job duties, reprimands and threats of disciplinary action, and one instance where a supervisor told a contractor not to work with the plaintiff. 766 F.Supp.2d at 600–01. In Nurriddin, the plaintiff alleged that in addition to denying him promotions, over the course of four years his management had "passed him over for performance awards, lowered his performance evaluations, unfairly reprimanded and criticized him, made disparaging remarks about his EEO complaints, closely scrutinized his work, refused him a window cubicle, removed some of his duties, and denied his requests to travel or otherwise failed to provide support for his work with staffing and funding." 674 F.Supp.2d at 93–94.

Smith's allegations are distinct in that they combine some of the worst elements of mistreatment from Thorn and Nurriddin with some additional egregious conduct. In this case, Smith has alleged a long list of systemic mistreatment that, liberally construing the Complaint as set forth above, she tied to her race, sex, and/or color.[5] This Court cannot say

---

[5] Smith's allegations of mistreatment include that the Army and her supervisors: passed her over for promotions in 2013 and 2014, (Compl. ¶¶ 103–17); suspended her without adequate justification, first for one day and then for ten days, (id. ¶¶ 20–54); harassed her for being unreachable in a situation where they knew or should have known she would be unreachable and was doing government work, (id. ¶¶ 58–87, 94); demanded Smith show proof of work while not requesting the same of her white and Asian colleagues, in a manner that suggested Smith was dishonest or untrustworthy, (id. ¶¶ 99–102); ostracized, did not support, interrupted, marginalized, bullied, and disrespected Smith, excluded her from meetings, and surveilled her, (id. ¶¶ 149–55, 161–62); systematically warned her coworkers not to interact with her and otherwise maligned her, (id. ¶¶ 156–59); and accused her of playing the "[race] card," (id. ¶ 140).

at this stage of the litigation that the conduct alleged by Smith was not sufficiently severe or pervasive to alter the her conditions of employment and to create an abusive work environment. Moreover, because substantially all of Smith's allegations involve misconduct by her supervisors, the hostile work environment may be imputed to her employer. See Strothers v. City of Laurel, Md., 895 F.3d 317, 332–33 (4th Cir. 2018). Accordingly, the Court will deny the Army's Motion to Dismiss Smith's hostile work environment discrimination claim.

**D.    Retaliation (Count III)**

To state a claim for retaliation under Title VII, a plaintiff must allege "(1) that she engaged in a protected activity, as well as (2) that her employer took an adverse employment action against her, and (3) that there was a causal link between the two events." Boyer-Liberto, 786 F.3d at 281. An adverse employment action is a discriminatory act that "adversely affects the terms, conditions, or benefits of the plaintiff's employment." James, 368 F.3d at 375. In retaliation cases, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006). Thus, the burden of establishing an adverse action in a retaliation claim is lower than that of discrimination. See White, 548 U.S. at 64–67 ("[T]he antiretaliation provision, unlike the substantive [discrimination] provision, is not limited to discriminatory actions that affect the terms and conditions of employment. . . . The scope of the antiretaliation

provision extends beyond workplace-related or employment-related retaliatory acts and harm.").

Smith's claim for retaliation is straightforward. She engaged in archetypal protected activity when she filed her EEO complaints in 2012, 2013, and 2014. (Compl. ¶¶ 16, 56). She suffered an adverse action when the Army suspended her for two weeks. See Allen v. Rumsfeld, 273 F.Supp.2d 695, 705–06 (D.Md. 2003) (finding that a ten–day unpaid suspension was an adverse action); Parkinson v. Anne Arundel Med. Ctr., Inc., 214 F.Supp.2d 511, 518 (D.Md. 2002) (noting that one-day, unpaid suspension could qualify as an adverse employment action). Thus, Smith need only plausibly allege a causal connection between the two.

"[T]emporal proximity between an employer's knowledge of protected activity and an adverse employment action suffices to establish a prima facie case of causation where the temporal proximity is 'very close.'" Jenkins v. Gaylord Entm't Co., 840 F.Supp.2d 873, 881 (D.Md. 2012) (quoting Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273–74 (2001)). The Army argues that the temporal proximity is insufficient here because Smith filed the relevant EEO complaint in April 2013 and was not suspended until more than a year later. (Def.'s Mot. at 21). However, Smith alleged that Kartachak, the individual who recommended the ten-day suspension in May 2014, learned of Smith's complaint against Brozovic in March 2014, just two months earlier. This Court has repeatedly found that temporal gaps of two months between protected activity and adverse action were sufficiently short to state a facially plausible claim of causation for the purposes of a retaliation claim. See, e.g., Clarke v. DynCorp Intern. LLC, 962 F.Supp.2d 781, 790

22

(D.Md. 2013); <u>Kline v. Certainteed Corp.</u>, 205 F.Supp.2d 468, 474–75 (D.Md. 2002); <u>Cox v. U.S. Postal Serv. Fed. Credit Union</u>, No. GJH-14-3702, 2015 WL 3795926, at *4 (D.Md. June 17, 2015); <u>Ford v. Berry Plastics Corp.</u>, CIV.A. RDB-12-0977, 2013 WL 5442355, at *10 (D.Md. Sept. 27, 2013); <u>Barnes v. Metro. Mgmt. Group, L.L.C.</u>, No. AW-11-3355, 2012 WL 1552799, at *4 (D.Md. Apr. 27, 2012).[6] Accordingly, the Court will deny the Army's Motion to Dismiss Smith's claim of unlawful retaliation.

In sum, the Court will deny the Army's Motion to Dismiss as to Counts II and III of Smith's Complaint. However, the Court finds that Smith fails to state a claim for disparate treatment discrimination, and will therefore dismiss Count I of the Complaint.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part the Army's Motion to Dismiss or for Summary Judgment (ECF No. 14). A separate Order follows. Entered this 29th day of September, 2020.

_____/s/_____
George L. Russell, III
United States District Judge

---

[6] In addition, Tarcza approved Smith's ten-day suspension just four days after Smith filed the EEO complaint forming the basis for this action. (<u>Id.</u> ¶ 56). Of course, such close temporal proximity suffices to state a facially plausible claim of causation for the purposes of Smith's retaliation claim.